Nichia Corporation v. Nichia Corporation Why don't we turn to the government and we'll be ready by the time. Thank you, Your Honor. Mr. Smith. So I am Matthew Smith, Attorney at Law representing the Appalachian-Nichia Corporation. Chief Judge Prost just said why don't we turn to the government. We can, of course, have the... I'm sorry, I misspoke. Not a problem at all, Your Honor. Thank you very much. May it please the Court. The Solicitor's Office will take the last five minutes of their lifetime to talk about the Luther procedural issues. So let me talk about the simplest version of the case, which is let's say Luther is out for the sake of argument. Let's say MCOR's claim construction is governing the case. What happens then? And we would submit to you that you can and should affirm the case even under those two assumptions. And you can do that under MCOR's claim construction because, as the Board found, the limitation that MCOR seeks to import into Claim 1 is effectively the limitation of Claim 15. And the Board found Claim 15 unpatentable over the ground for references, and I think properly so. The case that the Board relied on and that we put forward in the petition is much simpler, of course, I think, than Mr. Tomasulo makes it out to be. It is a single reference that teaches almost everything in Claim 1, the key to Gucci reference. It teaches the semiconductor layer, gallium nitride, n-type. It teaches the four-layer contact, aluminum, titanium, platinum, gold. It teaches that the titanium and platinum layers are barrier layers in the same sense as the 215 patent, which was something MCOR said was a key to the patent's breakthrough in the briefing at the top of page 15 in the blue brief. The only thing that the Board had to decide was whether under Claim 1 it was obvious to anneal, and under Claim 15 whether it was obvious to anneal to get to a low contact resistance. The four references that were cited were additive, as I think the questioning brought out. We didn't need four references to teach four different claim elements. All of them were directed to showing that annealing was a very common technique in the industry. Professor Schubert's testimony, which was mentioned during the questioning, still stands as undisputed. Ninety percent of all contacts were annealed. So this is something in the foremost of the mind of a person of ordinary skill in the art. And the references teach that it was advantageous, as we made out the case in our petition, which is on appendix sites, pages 107 to 110. Advantageous for purposes of increasing the conductivity? Or advantageous for a variety of reasons, which is why it's used in a number of settings? Both. Advantageous for a variety of reasons and for decreasing contact resistance. What is the sum total of your evidence that annealing is advantageous for reducing resistance, increasing conductivity? Thank you, Your Honor. So, first of all, we have the testimony of Professor Schubert on that issue, which is appendix pages 156 and 157, who said that annealing was commonly used to reduce contact resistance, and the person of ordinary skill in the art had the ability to do that. Second, in the admitted prior art, the very first sentence of the admitted prior art says, aluminum was a typical metal used to form a low-resistance contact to n-type gallium nitride on annealing. And the second page of the admitted prior art says that aluminum post-metallization to n-type gallium nitride was either aluminum, titanium, or titanium-aluminum, and annealing is used to minimize the contact resistance. And that seems pretty strong. I think even if the board had only relied on the admitted prior art in combination with Kitaguchi, that would be substantial evidence to uphold the board's finding that it was a motivation to anneal a contact and to lower the contact resistance through the process of annealing. But we also have the Shibata reference, and the Shibata reference, as noted, is a very similar kind of contact. It has an aluminum base layer, a gold top layer, and a barrier in between to prevent the diffusion. That was also annealed and connected to, as the board found on page 32 of its decision, the benefits that are stated in paragraph 27 of Shibata, which was good wire bonding, good omics contact, and a contact resistance of 10 to the minus 5 centimeters squared. And I will – Without the squared. Sorry, yes. Without the squared. It was found to be a typo, I think, by the board, with substantial evidence support. And I think that Mr. Tomasulo is correct that the way that is literally stated is simply we put the layers down on top of the semiconductor, then we annealed, and here's what we got. Without saying, and the annealing took us from here to here. Yes, I think that's correct. Okay. But I think the admitted prior art does get you there, right? I mean, the inventors are saying we typically, in the prior art, use annealing to lower the contact resistance or even to minimize the contact resistance, which is what they say on page A172. So that seems a very solid evidence that the board could have relied on reasonably and meets the substantial evidence standard for the motivations you can model. Do you want to address Mr. Tomasulo's argument that Fujimoto essentially undermines the utility of Shibata because of the more extensive investigation, which produced not the same results? Yes, thank you. I will address that in a couple of different ways. First of all, I think, as came out in the questioning, the context of your review is important. It is, on that question, a substantial evidence review of what the person of ordinary skill in the art would have read out of the totality of references. And they have arguments based on the text of Fujimoto. But the text of Shibata says that Shibata got a different result. The board was reasonable to rely on the plain text of Shibata. And I think also reasonable to discount the inference that MCOR attempts to draw from Fujimoto. Because ultimately, Fujimoto recommended annealing of an aluminum-based gold-topped contact. Specification actually says the contact is preferably annealed at one degree centigrade. So it is difficult, I think, to infer that a person of ordinary skill in the art would read Fujimoto and come to the conclusion that we should not anneal the Kitaguchi contact. I think it would be more of a departure from Fujimoto if a person of ordinary skill in the art read the Fujimoto patent and said, let's not anneal Kitaguchi. Because 90% of all prior art contacts are being annealed. We have Shibata annealing the aluminum-based contact. We have Fujimoto annealing the aluminum-based contact. We've got the Ferrezi reference, which was brought up in our petition and brought up by MCOR as well, annealing an aluminum contact. If you want to talk about Luther, Luther certainly does the same thing. But I think Luther's disclosure, if I can address that for a second, is actually just about identical to the admitted prior art disclosure. In other words, both references say that if you have aluminum on n-type gallium nitride and you anneal it, the contact resistance goes down. Now Luther actually gives a specific value for the contact resistance. The admitted prior art just says low resistance or minimize the contact resistance. But presumably, since that's the provisional application leading to the 215 patent, it means the same thing the 215 patent means when it says low contact resistance. So Luther, in that sense, is cumulative, I think, to the admitted prior art, quite cumulative to Shibata with the question of the connection between annealing and the low contact resistance, which is not quite clearly as made out as it is in the admitted prior art. But the board relied on both Shibata and the admitted prior art, both for the finding that annealing would have been obvious under Claim 1 and for the finding that a person of ordinary skill in the art could have annealed down to 10 to the minus 15 centimeters squared for Claim 15, which, by the way, is agreed to be not all that exceptional of a contact resistance in that time. We have Professor Schubert's testimony in paragraph 5 of his first declaration, which is at appendix page A157, where Professor Schubert says, look, in that time frame, this is the middle of the road contact. It's just about the dividing line between good and bad. There are plenty of contacts that were lower than that in that time frame. And it's just not unexpected that one would achieve 10 to the minus 15, given the technology that people had available to them to make these prior art contact metal stacks in the year 2000, as opposed to, say, in the year 1993 when the Nakamura works started. Thank you. I can feed the rest of my time to the solicitor if that's possible. Thank you. Good morning. May it please the Court. MCOR tells this Court that the Luther reference was inadmissible, but an admissibility decision must first be considered by the lower tribunal here at the Board. MCOR never gave the Board the opportunity because MCOR never filed a motion to exclude as required by the Board's regulations. 37 CFR 42.64 is crystal clear on the correct procedure. It provides for a two-step process. First, a party objecting to evidence must serve its objections on the other party. Then, to the extent there is no agreement between the parties, the objecting party must file a motion to exclude with the Board. Section 42.64C says a motion to exclude evidence must be filed to preserve any objection. The Board in IPR proceedings relies heavily on paper submissions. This is reflected in the Board's scheduling order, which is at A20278, which provides dates for the briefings for motions to exclude. And the Board, in its final written decision, not only addresses the merits of a case, but also rules on motions to exclude. Here, the Board did just that at JA5763. It addressed the motions to exclude filed by each party. MCOR's argument that it had nothing to move to exclude lacks merit. First, MCOR is arguing that Luther is inadmissible for a particular purpose, that it is admissible as to any issue concerning the original claim. That it's the very subject of a motion to exclude or a motion to eliminate, however you characterize it. Second, MCOR objected to Luther in its objections. It served on NICHEA. So MCOR certainly knew how to object to the use of Luther in the context of the original claim. Third, MCOR's failure to move to exclude appears to have been a strategic decision. MCOR embraced and specifically addressed Luther. In its reply in support of its motion to amend, MCOR relied on Luther, and not only as to the amended claim, but as to the original claim. And this is shown at pages A768 to 771. Thus, MCOR has waived its argument that Luther is not admissible and should not be considered by the Board. If the Court does consider the argument, however,  in response to its teaching away was proper. I just would like to point out that statute contemplates that there is discovery through the IPR proceedings and there's regulations about discovery and especially expert declarations and expert depositions are considered, and that is how Luther came up in this context. And if you look at the Board's decision, it is clear how they used Luther. They used it only in response to a teaching away argument. Their ultimate decision on patentability is about the same combination of references that is raised in the petition. This is at pages A16, A33, A49. The Board is not relying on Luther for the determination of unpatentability. And as the Board steps through the prior art on pages A17 through A21, it is describing those same references that are mentioned in the petition and not Luther. And again, when the Board analyzes the claim requirements, the Board is relying on those same references, not Luther. The Board only addresses Luther when it is explaining all the shortcomings of the teaching away argument. The Board is thoroughly addressing the arguments that are presented to it in the various papers, but its ultimate conclusion on obviousness at A49 is the same combination of references that the CHIA identified in its petition, which does not include Luther. And I just want to point out that the two Board decisions that counsel raised for the first time this morning, the parties in those cases flagged the issues well in advance for the Board, which MCOR failed to do here. If the Court doesn't have any questions. Thank you. Your Honor, if I may address a few of the points that were raised by my friends. With respect to, I believe, what I heard was that Mr. Smith said that in response to your question is that there is some evidence from him that annealing decreases contact resistance. I don't see that that's what this says. When I read it, it said it talks about annealing and it talks about contact resistance, but there's no linkage. He's not saying it was well known to use annealing to decrease contact resistance. Their argument amounts to that because annealing was known, it's always obvious to anneal. And maybe that is, I don't know, that doesn't sound reasonable to me because what I hear from the references is, sure, you can anneal it. We've tried it, but it doesn't work and it causes problems. And in that instance, I don't look at it as a teaching way. I look at it as a teaching of the reference. It's saying when you anneal aluminum, bad things happen. And that's the result of this. And so when I look at the references, I don't look at it as just a teaching way. I look at it as what is the teaching of the reference. It says we tried this and it didn't work. We tried this and it wasn't good. Nakamura, a Nobel Prize winner, says aluminum can hardly form an element contact on NGAN. The admitted prior artist says, yeah, it was known to reduce contact resistance by annealing an aluminum-based contact, but that leads to device failure. And then Fujimoto, you know, it gets to a contact where they say that the resistance level, they call it 10 to the minus fifth is a run-of-the-mill contact. I think what they really mean is what Professor Schubert says, that's the dividing line. If you're higher than that, it's bad. He calls it a poor contact. And so Fujimoto, they work through, I mean, it's a 20-column reference, and it's all about contact. They experiment with dozens, I think 45 different contacts, and the best that they can do with any of them is in the 10 to the minus four range, and that's with a copper-based contact. With respect to Shibata, it's two paragraphs. It says that, you know, it predates Fujimoto, and it says, you know, we did a BNC, which included annealing, which included an aluminum-based contact, a very easy recipe to follow. And the people at Fujimoto said, we tried it experimentally, and we found it didn't work. And then with respect to Ferraci, which my colleague talked about, Ferraci says when you anneal, you increase the resistivity of aluminum. I mean, sure, you can anneal aluminum, but Ferraci says it's bad. It invites an increase in the resistivity. Nakamura says you can hardly form an aluminum-based contact on NGAN. The admitted prior art is inconsistent with that, right? The admitted prior art says, yes, you lower, but you increase the risk of device failure. Correct. Yes. So you can hardly cite Ferraci for the proposition that it increases resistance when your own admitted prior art says it lowers resistance. Well, what I would say is that Ferraci says that. I mean, I'm not citing it for a proposition. I'm just saying what it says. I mean, I'm saying it doesn't – All right, well, it's interesting that that's what it says. But since you admit in your own prior art that your own admitted prior art that it doesn't have that effect, it seems to me that I'm not – it's not terribly useful to me to look at Ferraci and say, oh, well, that indicates it's not obvious. Well, I'm just pointing out that what he said about it was wrong, that it doesn't say that you should anneal aluminum. My point is that the references don't say anything good happens or that the you anneal aluminum, and that's the teaching of the references. That's what I would stipulate. As far as the – Final thought because your time is up. Okay, well, then that's good enough for me then. Thank you for your time, Your Honor. Thank you. We thank all counsel on the case.